UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| SYLVESTER WOLFE, ) | Civil Action No.: 4:13-2005-JFA-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| WILLIAM R. BYARS, JR., DOCTOR ) | |
| THOMAS E. BYRNE, MD, and ) | |
| WARDEN JOHN M. PATE; ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**I.    INTRODUCTION**

In this action, Plaintiff, who is proceeding pro se, alleges that Defendants were deliberately indifferent to his serious medical needs in violation of his constitutional right to be free from cruel and unusual punishment.  Presently before the Court is Defendants' Thomas Byrnes and John Pate's Motion for Summary Judgment (Document # 49).[1]  Because he is proceeding pro se, Plaintiff was warned pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Motion could result in the dismissal of his claims.  Plaintiff timely filed a Response (Document # 57).  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC.  This Report and Recommendation is entered for review by the district judge.

**II.    FACTS**

The facts in this case are not largely in dispute.  The issue here is whether the medical

---

[1] Defendant William Byars, Jr. has already been dismissed from this action.  Order dated September 23, 2013 (Document # 19).

treatment Plaintiff received amounts to deliberate indifference to a serious medical need. At the time of the events alleged in the Complaint, Plaintiff was an inmate in the custody of the South Carolina Department of Corrections (SCDC) and was housed at the Allendale Correctional Institution (ACI). On August 26, 2012, Plaintiff sustained injuries after falling from an attempt to scale a fence at ACI. SCDC Medical Encounters 29, 31 (Doc. # 49-4). Plaintiff complained of pain in his right elbow and wrist, mild left hip pain and a laceration on his left thigh. After the fall, Plaintiff was seen by the nursing staff at ACI, who issued Plaintiff an arm sling, an ice pack, temporary dressings for his wounds, and Motrin for pain. SCDC Medical Encounter 29. He was then transported to the Allendale County Hospital (ACH) Emergency Room for evaluation. Byrne Aff. (Doc. # 49-3). Plaintiff's laceration was sutured and x-rays were taken, and Plaintiff was transferred to Palmetto Health Richland (PHR) to receive further care. PHR Records (Doc. # 49-7). Plaintiff was diagnosed with a "closed right comminuted intra-articulated distal radius fracture." Id.

  Dr. Byrne first saw Plaintiff after he returned from the PHR emergency room the next day, on August 27, 2012. He examined the inmate and noted that he was wearing a splint on his right arm that was placed by PHR. Byrne Aff. At that time, Dr. Byrne noted that Plaintiff had a distal radial fracture to his right arm, based upon X-ray films obtained at ACH and PHR, in addition to his independent examination of the inmate's condition. Byrne Aff.; see also ACH Records (Doc. # 49-9); PHR Records. Dr. Byrne instructed Plaintiff to wear the splint at all times and provided him with a sling for comfort. The inmate was then scheduled for a follow up appointment with the orthopedic clinic. Dr. Byrne did follow up examinations on the inmate before his orthopedic appointment on August 28, 2012 and August 30, 2012. Byrne Aff.; SCDC Medical Encounters 36, 38.

  On September 5, 2012, Plaintiff was transported to Kirkland Correctional Institution (KCI)

for his appointment at the Orthopedic Clinic. Byrne Aff.; SCDC Medical Encounter 42. Plaintiff received X-rays on his pelvis and hip because of continued complaints of hip pain. Byrne Aff.; SCSC Medical Encounters 43, 44. Upon examination, there was no injury to either hip, only degenerative changes. Id.: SCDC Medical Encounter 44. On September 6, 2012, after Plaintiff's visit to the Orthopedic Clinic, Dr. Byrne recommended surgery on Plaintiff's right arm fracture. Byrne Aff.; SCDC Medical Encounter 46.

Plaintiff was transported to PHR for surgery on his distal radial fracture on September 10, 2012. Byrne Aff.; SCDC Medical Encounters 47-51; PHR Medical Records. After Plaintiff returned from PHR, Dr. Byrne saw him on September 11, 2012, and scheduled a follow up visit at the Orthopedic Clinic. Byrne Aff.; SCDC Medical Encounters 52, 56. Plaintiff was also given specific instructions on how to maintain his injury after surgery, including medication and an elevation pillow. Byrne Aff.; SCDC Medical Encounters 54, 55.

Plaintiff returned to KCI for a follow up appointment in the Orthopedic Clinic on September 24, 2012. Byrne Aff.; Physician Transfer Notes (Doc. # 49-6) dated Sept. 24, 2012. Plaintiff was prescribed Motrin and Ibuprofen for his pain. Byrne Aff.; SCDC Medical Encounter 62 . Dr. Byrne saw Plaintiff on September 26, 2012, and discussed the results of his visit with the orthopedist. Byrne Aff.; SCDC Medical Encounter 64. Dr. Byrne explained that the note from the orthopedist instructed Plaintiff to work on his own on mobility in his elbow. Id.

Dr. Byrne visited Plaintiff for a follow up on his condition on October 17, 2012. Byrne Aff.; SCDC Medical Encounter 67. Dr. Byrne informed Plaintiff that he had another follow up appointment with the orthopedist on October 22, 2012. Id. Plaintiff was transported to KCI to the Orthopedic Clinic on October 22, 2012, where he had a pin removed from his wrist and was given

follow up X-rays. Byrne Aff.; SCDC Medical Encounters 69, 70; Physician Transfer Note dated Oct. 17, 2012. On October 26, 2012, Dr. Byrne then scheduled Plaintiff for another follow up with the orthopedist for December and reordered Ibuprofen. Byrne Aff.; SCDC Medical Encounter 71. He again ordered Ibuprofen for Plaintiff on November 26, 2012. Byrne Aff.; SCDC Medical Encounter 73.

On December 4, 2012, physical therapy was performed with Plaintiff, and he was instructed to continue range of motion exercises daily. SCDC Medical Encounter 74. Plaintiff was also prescribed Naproxen for pain. Id. Plaintiff returned to the Orthopedic Clinic at KCI on December 10, 2012, where he received X-rays on his wrist. Byrne Aff.; SCDC Medical Encounters 75, 76; Physician Transfer Note dated Dec. 10, 2012. Dr. Byrne scheduled a follow up appointment for six months from that date to recheck Plaintiff's elbow progress, which was what the orthopedist recommended. Byrne Aff.; SCDC Medical Encounters 74, 86. Although Dr. Byrne initially scheduled an appointment for a six month follow up for Plaintiff, he saw relative improvement in Plaintiff's condition during subsequent visits and reconsidered the necessity of orthopedic follow up. Byrne Aff. Dr. Byrne refilled the inmate's Naproxen on January 9, 2013, April 9, 2013, May 1, 2013, June 4, 2013 upon Plaintiff's request. Byrne Aff.; SCDC Medical Encounters 80, 90, 92, 96. Plaintiff did not receive a six month follow up appointment with the Orthopedic Clinic.

After consistent complaints of pain from the inmate, Dr. Byrne later determined that it was time for Plaintiff to receive a follow up with the orthopedist. Byrne Aff. On September 23, 2013, an appointment with the Orthopedic Clinic was scheduled for December 9, 2013. SCDC Medical Encounter 102. It is does not appear from the record that this appointment was kept. Plaintiff ultimately saw the orthopedist on February 10, 2014, who recommended home exercises and

stretching based on the X-rays.[2]  Byrne Aff.; SCDC Medical Encounter109-111; Physician Transfer Note dated Feb. 10, 2014. The orthopedist noted that these non-operative measures were appropriate. Physician Transfer Note dated Feb. 10, 2014.  Plaintiff was approved to have a Theraband in his cell so that he could perform home exercises to increase range of motion and decrease stiffness in his elbow.  Byrne Aff.; SCDC Encounters 113, 114.

**III.    STANDARD OF REVIEW**

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. at 322. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary

---

[2]The X-rays showed small calcifications in the bone, but otherwise normal structure. ImageCare Report (Doc. # 49-10).

judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## VI. DISCUSSION

### A.     42 U.S.C. § 1983

Plaintiff brings this action for deliberate indifference to his serious medical needs pursuant to 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color

of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

### B.     Claims Against Defendants in Their Official Capacities

Defendants argue that Plaintiff's § 1983 claims against them for money damages in their official capacities are barred pursuant to Eleventh Amendment Immunity. They also argue that the action against them should be dismissed as a matter of law to the extent that they are sued in their official capacities because while acting in their official capacities as an employee of the SCDC they are not "persons" under 42 U.S.C. § 1983 and, therefore, not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 70.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the

Eleventh Amendment immunity. Id. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that Defendants were employees of the SCDC at the time of the allegations in the complaint. Thus, they are entitled to Eleventh Amendment immunity from monetary damages in their official capacity.

### C.    Medical Indifference

To state a claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment, "[a] plaintiff must satisfy two elements ...: he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." Sires v. Berman, 834 F.2d 9, 12 (1st Cir.1987). In the case of Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain." Id. (quoting Gregg v. Georgia, 428 U.S. 153, 169–73, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.... We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Id. at 103–105 (footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional,

the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> ... a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Id. at 107. There, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), ... nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Miltier v. Beorn, 896 F.2d 848, 841 (4th Cir.1990). Unless medical needs were serious or life threatening, and the Defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir.1986).

It is undisputed that Plaintiff suffered a serious medical need. However, he fails to present sufficient evidence that Defendants were deliberately indifferent to that need. In the affidavit attached to his response, Plaintiff argues that Dr. Byrne unduly delayed treatment by failing to see Plaintiff on August 26, 2012, the day Plaintiff suffered his injuries. Instead, he argues, Dr. Byrne waited until the next day, August 27, 2012, to see him. Pl. Aff. ¶¶ 2-4. However, the record reveals that following his fall on August 26, 2012, Plaintiff was seen by the nursing staff at ACI, who issued Plaintiff an arm sling, an ice pack, temporary dressings for his wounds, Motrin for pain, and arranged for his transport to the ACH Emergency Room for evaluation. There, Plaintiff's laceration was sutured and x-rays were taken, and Plaintiff was transferred to another hospital, PHR, to receive

further care. Plaintiff returned to ACI the next day and was seen by Dr. Byrne. Thus, there was no unduly delay in receiving treatment immediately following Plaintiff's injuries.

Plaintiff next complains that he notified Dr. Byrne and Warden pate of his "risk of harm" on September 25, 2012, and October 24, 2012, and these Defendants "failed to act or respond reasonably." Pl. Aff. ¶ 12. On September 25, 2012, Plaintiff sent a Request to Staff Member form, stating that he had just received a hard cast from KCI the day before and it hurts to use his arm. Request to Staff Member Form dated Sept. 25, 2012 (attached to Pl. Complaint). The record reveals that Plaintiff had already received medication for his pain on September 24, 2012, and that he saw Dr. Byrne on September 26, 2012, who explained to him the orthopedist's instructions that Plaintiff work on the mobility in his elbow. Plaintiff fails to show how Defendants "failed to act or respond reasonably."

Plaintiff sent another Request to Staff Member form on October 24, 2012, asking Dr. Byrnes to look at his arm, because the cast had been removed and his elbow still appeared to be out of place. Request to Staff Member Form dated Oct. 24, 2012 (attached to Pl. Complaint). Plaintiff requested a second opinion, pain medication and physical therapy. Id. Dr. Byrne saw Plaintiff two days later, on October 26, 2012, and prescribed pain medication. On December 4, 2012, the medical record reveals that Dr. Byrne reviewed physical therapy with Plaintiff. On December, 10, 2012, Plaintiff had a follow up appointment with the orthopedist. Although he does not explicitly state it in his response or affidavit, Plaintiff presumably argues that Defendants failed to respond properly because they did not refer him for a second opinion. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir.1988). Questions of

-10-

medical judgment are not subject to judicial review under § 1983. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir.1975). Prison officials implement the type and amount of medical treatment at their discretion. See Allah v. Hayman, 442 F. App'x 632, 635 (3d Cir.2011) (holding that deliberate indifference standard "requires much more" than taking issue with the "amount and kind of medical care" an inmate received); Johnson v. Doughty, 433 F.3d 1001 (7th Cir.2006) (finding that a prison doctor who prescribed non-surgical means of treating an inmate's hernia was not deliberately indifferent to the inmate's medical needs where the doctor formed a professional opinion, other doctors agreed, and the inmate continued to have associated abdominal pain); Faison v. Rosado, 129 F. App'x 490, 492 (11th Cir.2005) (noting that although a prisoner "might not agree with the method of treatment provided, matters of medical judgment do not give rise to a § 1983 claim"). Under the facts presented, Dr. Byrne's decision not to refer Plaintiff to another doctor for a second opinion fails to rise to the level of a constitutional violation.

Finally, Plaintiff argues that the pain medications prescribed by Dr. Byrne did not alleviate his pain and needless suffering. Pl. Aff. ¶ 7. He does not argue that Dr. Byrne failed to prescribe pain medication and, indeed, the record reveals that he did so on numerous occasions. As set forth above, the type of medication to prescribe to an inmate is a matter of medical judgment left to the discretion of the medical provider. Defendants aptly note that "[m]erely because the medical staff is unable to alleviate all of the inmate's pain does not mean that there was deliberate indifference to the inmate's serious medical condition." Def. Mem. pp. 7-8.

In sum, Plaintiff fails to show that Defendants were deliberately indifferent to his serious medical needs, that is, that the treatment provided was "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d

at 841. To the contrary, Plaintiff received consistent care with respect to the injuries he received on August 26, 2012. Therefore, summary judgment is appropriate on this claim.

### D.    Qualified Immunity

Defendants argue that, even if they were deliberately indifferent to Plaintiff's serious medical needs, they are entitled to qualified immunity. "The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing." Akers v. Caperton, 998 F.2d 220, 225–26 (4th Cir.1993). The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818.

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. Id. at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." Parrish v. Cleveland, 372 F.3d 294, 301 (4th Cir.2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a

reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." Id. (citations and internal quotation omitted).

As discussed above, Plaintiff fails to present sufficient evidence to show that Defendants violated his constitutional rights. However, to the extent there was a constitutional violation, a reasonable person in Defendants' positions would not have known that their conduct violated Plaintiff's constitutional rights. Thus, Defendants are entitled to qualified immunity for Plaintiff's claims against them in their individual capacities.

### V.   CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment (Document # 49) be granted and this case dismissed in its entirety.

                                                  s/Thomas E. Rogers, III  
                                                  Thomas E. Rogers, III  
                                                  United States Magistrate Judge

September 29, 2014  
Florence, South Carolina

**The parties are directed to the important notice on the following page.**